# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

JEFFREY CHARLES BOLES,      )
                                  )
     Plaintiff,           )
                                  )     **No. 2:12-cv-00079**
v.                               )
                                  )     **Judge Nixon**
CAROLYN W. COLVIN,       )     **Magistrate Judge Bryant**
**Acting Commissioner of Social Security,**   )
                                  )
     Defendant.        )

## ORDER

Pending before the Court is Plaintiff Jeffrey Charles Boles' Motion for Judgment on the Administrative Record. (Doc. No. 15.) On August 18, 2014, Magistrate Judge Bryant issued a Report and Recommendation ("Report") recommending that Boles' Motion be denied and the Social Security Administration's ("SSA") decision affirmed. (Doc. No. 21 at 19.) Boles filed an Objection to the Report (Doc. No. 23), and the Commissioner filed a Response (Doc. No. 26). For the reasons stated below, the Magistrate Judge's Report is **REJECTED** in part, Boles' Motion is **GRANTED**, and the case is **REMANDED** to the Commissioner for further proceedings.

## I.    STANDARD OF REVIEW[1]

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial

---

[1] The Court adopts the facts and procedural history as stated in Magistrate Judge Bryant's Report. (Doc. No. 21 at 1–13.) The Court restates the facts and procedural history below only as necessary and relevant to the resolution of the issues.

evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the Administrative Law Judge ("ALJ") and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## II.    BOLES' OBJECTION TO THE REPORT AND RECOMMENDATION

Boles objects to the Magistrate Judge's finding that ALJ Williams adequately considered the impact of Boles' obesity on his residual functional capacity ("RFC"). Boles provided a treating physician's opinion indicating obesity impacted his ability to work, thus he contends the ALJ was required to discuss the impact of obesity on his ability to work, not simply to "[make] a

conclusory statement that he had considered it." (Doc. No. 23 at 1.) The Magistrate Judge found, and the Commissioner argues in response, that any such error is harmless. First, the ALJ had good reasons for discounting the opinion of Boles' treating physician, Dr. Michael Cox. Furthermore, because the ALJ's Residual Functional Capacity ("RFC") assessment was similar to that proposed by Cox, the ALJ's conclusions reveal "his implicit accreditation of the impact of plaintiff's morbid obesity and its sequelae on his ability to perform weight-bearing activities." (Doc. No. 26 at 3 (quoting Doc. No. 21 at 16).)

The SSA recognizes that "obesity may increase the severity of coexisting or related impairments," especially musculoskeletal and cardiovascular impairments, and requires ALJs to consider the effects of obesity at all steps of the sequential disability evaluation process. *Titles II & XVI: Evaluation of Obesity*, Soc. Sec. Ruling 02-1P, 2002 WL 34686281, at *5 (Sept. 12, 2002) [hereinafter SSR 02-1P]. A social security claimant bears the evidentiary burden of establishing that her obesity imposes functional limitations. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004); *Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857–58 (6th Cir. 2003) (noting that "a claimant has the burden of proving a disability" under 20 C.F.R. § 404.1512). The SSA "does not mandate a particular mode of analysis" for evaluating obesity claims. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). However, if a claimant puts forth evidence of the impact of obesity, the ALJ "will explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." *Norman v. Astrue*, 694 F. Supp. 2d 738, 749 (N.D. Ohio 2010) (quoting SSR 02-1P at *7). The ALJ indicated he considered Boles' obesity pursuant to SSR 02-1p (Tr. 18), but upon consideration of the record, the Court concludes the ALJ did not.

First, the ALJ briefly described Boles' musculoskeletal impairments, including "chronic pain of the low back, left knee, history of right arm/hand injury, and history of fractured pelvis" (Tr. 17), but notes that "the record indicates he continued to work through 2007," and "[t]he fact that these impairments did not prevent the claimant from working at that time strongly suggests that they would not currently prevent work" (Tr. 18). However, the record also indicates that as of August 30, 2007, Boles only weighed 298.6 pounds. (Tr. 362.) At the hearing, Boles testified that he is five feet ten inches tall, and weighed between 395 and 398 pounds. (Tr. 32.) In light of Boles' obesity, the fact that his impairments did not prevent him from working in 2007 is not evidence that his impairments "would not currently prevent work," when Boles was over 100 pounds lighter in 2007 than at the time of the hearing.

Second, the ALJ did not adequately consider the impact of Boles' obesity because he did not evaluate Dr. Cox's opinion as required by SSA rules, but instead deferred to the opinion of a consultative examiner who did not account for Boles' obesity in her Medical Source Statement. The ALJ is required to give treating source[2] "opinions" "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If these conditions are not met, the ALJ is not permitted to discard the treating source's opinion. "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length,

---

[2] Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." The parties agree that Dr. Cox is a treating source, thus the Court assumes he is for the purposes of this analysis. (*See* Doc. Nos. 16 at 19; 17 at 21.)

frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (internal citation and quotation marks omitted). The ALJ must give "good reasons" for the weight given a non-controlling treating source opinion that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted). A failure to give good reasons "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless the failure is harmless error, requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

The ALJ did not give Dr. Cox's opinion controlling weight because it was "over-restrictive and inconsistent with the record." (Tr. 19.) The ALJ did not explain why Dr. Cox's opinion was inconsistent with the record, except to find the opinion was more restrictive than the opinion of consulting, examining physician Donita Keown. (*See* Tr. 18–19.) However, the fact that Dr. Cox's opinion is inconsistent with Dr. Keown's opinion is an insufficient basis to deny Dr. Cox's opinion controlling weight.

> [C]onflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with [other] sources.

*Gayheart*, 710 F.3d at 377. "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 552.

5

Even if the ALJ correctly determined Dr. Cox's opinion was not entitled to controlling weight, the ALJ was required to consider Dr. Cox's opinion according to the factors listed above and determine the weight to which the opinion is entitled. The ALJ explained he did "not accord much weight to [Dr. Cox's] very conservative assessment of [Boles'] RFC" for the following reasons: (1) "the treatment history of record is notably brief"; (2) Dr. Cox made "minimal clinical findings," noting no motor defects, a full range of motion in most joints, and "no redness, warmth, synovitis or effusion of his joints"; (3) "the absence of aggressive treatment"; and (4) the consulting physicians made "more specific and consistent findings." (Tr. 19.)

As to the fourth reason, the Court finds that the ALJ erred in deferring to Dr. Keown's opinion. Dr. Keown completed a medical source statement following one examination in January 2010. (Tr. 371–79.) However, the Medical Source Statement indicates Dr. Keown did not consider Boles' "body habitus" in making her assessment. (Tr. 374.) "[I]t is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build." SSR 02-1P at *7. However, "[w]hen we identify obesity as a medically determinable impairment . . . we will consider any functional limitations resulting from the obesity in the RFC assessment." *Id.* Here, Keown did not identify obesity as one of Boles' medically determinable impairments, even though she estimated Boles' weight as somewhere between 350 and 400 pounds.[3] Thus Keown apparently did not take account of Boles' obesity in her Medical Source statement. Keown's examination of Boles was otherwise incomplete: She was unable to weigh Boles, and therefore did not record an accurate measurement of his weight in her examination

---

[3] Under the National Institutes of Health's guidelines for the medical determination of obesity, in most cases individuals with a body mass index ("BMI") over 30 are considered obese. SSR 02-1P at *2. At 350 pounds, Boles' BMI was 50. *See* Calculate Your Body Mass Index, National Institutes of Health, http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

record (Tr. 371); she indicated the "[l]ower extremity exam is difficult" because the "claimant's legs are heavy" (Tr. 372); she did not complete a full examination of his "gait and stations" (*id.*); and, as noted above, she did not list obesity in her impressions. Furthermore, aside from her limited findings from the examination, Keown provided no explanation for her assessment of Boles' functional capacity. (*See* Tr. 374–79.) The ALJ did not address any of these considerations in his Decision. (*See* Tr. 18–19.)

Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite." *Gayheart*, 710 F.3d at 379. Any "alleged inconsistencies in [the treating source's opinion], therefore, cannot constitute 'good reasons' for affording them little weight when more flagrant inconsistencies go unquestioned in the medical opinions to which the ALJ deferred." *Id.* at 380. Dr. Keown's opinion contained flagrant deficiencies that went unexamined by the ALJ, such as her failure to take Boles' obesity into account and her failure to complete an examination of Boles' "gait and stations," which is particularly notable and relevant in light of the fact that Boles' primary impairments are his "chronic pain of the low back, left knee . . . and history of fractured pelvis" (Tr. 17) that, according to Boles, "have caused him to be unable to ambulate well, stand on his feet and care for himself" (*see* Tr. 486). Such an incomplete examination and findings cannot be the basis for discrediting Dr. Cox's opinion.

The ALJ's other reasons for discounting Dr. Cox's opinion—the lack of aggressive treatment, minimal clinical findings, and brief treatment relationship—are insufficient to justify giving Dr. Cox's opinion "not . . . much weight." (Tr. 19.) For instance, these reasons are offset

by Boles' testimony (Tr. 39) and Dr. Cox's note (Tr. 486) that Boles has been unable to afford

further treatments or diagnostic testing. Furthermore, the ALJ failed to address other record

evidence that is consistent with Dr. Cox's findings, such as the treatment records from the

Overton County Health Department and Dr. Mark Langenberg, and Boles' testimony regarding

his pain and physical impairments.

Even if there "is sufficient evidence in the record for the ALJ to discount the treating

source's opinion and, thus, a different outcome on remand is unlikely," remand is still required

where an ALJ fails to follow the good reasons requirement, unless the failure is harmless error.

*Wilson*, 378 F.3d at 546. The error is harmless if:

> (1) "a treating source's opinion is so patently deficient that the Commissioner
> could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the
> treating source or makes findings consistent with the opinion"; or (3) "where the
> Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural
> safeguard of reasons—even though she has not complied with the terms of the
> regulation."

*Friend*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). As described

above, Dr. Cox's opinion is consistent with other evidence in the record, thus the first ground

does not apply. Furthermore, the Court finds the third ground inapplicable because the ALJ's

Decision did not give "the claimant and a reviewing court a clear understanding of the reasons

for the weight given a treating physician's opinion." *See id.* The Commissioner contends the

second ground applies because the ALJ's RFC assessment was similar to that proposed by Dr.

Cox. However, the Court disagrees because the ALJ's assessment is less restrictive than that

proposed by Dr. Cox and makes no mention of certain limitations Dr. Cox prescribed. For

instance, Dr. Cox limited Boles to lifting and carrying ten pounds occasionally and less than ten

pounds frequently (Tr. 482), but the ALJ found Boles could lift and carry objects weighing up to

twenty pounds occasionally and ten pounds frequently (Tr. 17; *see* 20 C.F.R. Sec. 404.1567(b)).

Dr. Cox found Boles had extensive postural limitations (Tr. 484), but the ALJ found none (Tr. 17). Accordingly, the Court finds the ALJ's failure to give good reasons for the weight accorded Dr. Cox's opinion was not harmless error and is grounds for remand.

### III. CONCLUSION

For the reasons stated above, the Court **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's Report (Doc. No. 21), **GRANTS** Boles' Motion (Doc. No. 15), **VACATES** the ALJ's Decision, and **REMANDS** this matter to the Commissioner for further proceedings.

It is so ORDERED.

Entered this the 22nd day of July, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT